IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| LOUIS VASSALLO, PATRICK KERR, TIMOTHY GREER, ERIC BELL and AARON KANDLER on Behalf of Themselves and All Others Similarly Situated, | § § § § § § | |
| Plaintiffs | § § | |
| v. | § § | CIVIL ACTION NO. 4:15-cv-00097 |
| GOODMAN NETWORKS, INC. | § § | |
| Defendant. | § § | |

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO MOTION TO
CONDITIONALLY CERTIFY A CLASS**

Plaintiffs Louis Vassallo, Patrick Kerr, Timothy Greer, Eric Bell, Aaron Kandler,

Fredrick Hawkins and Rodrick Cole file this Reply to Defendant Goodman Networks, Inc.

("Goodman")'s Response to Plaintiffs' First Amended Motion to Conditionally Certify

Collective Action and would show the Court the following:

## I.   SUMMARY

1.      Defendant respond to Plaintiffs motion to certify on tenuous grounds that ask

the Court to reward Defendant for uniformly categorizing potential class members as

exempt based on how <u>Defendant</u> chose to classify them. Defendant further misleads the

Court with straw man arguments, ignoring or minimizing Declarations of now seven

potential class members.

2.      Defendants ask the Court to find the Construction Manager position too

diverse to certify a class, but Defendants themselves find the position similar enough to deem it exempt categorically.

3.     Defendants ask the Court to review the evidence and merits of Plaintiffs' motion to certify through "the lens of the exemption defenses." Defendant goes on to attempt to show how Construction Manager job duties varied (naming three separate divisions). However, Courts do not review the underlying merits of the action in determining whether to conditionally certify.[1] This includes arguments about differences in job duties among various Plaintiffs.[2]  Courts consider these arguments better left to the second stage of certification.[3]

4.     The core of this case is that the job of members of the putative class were essentially to drive to remote rural cell towers, check the work in progress against the plans for the towers, and report back. That is it. Argument as to other tasks that members may or may not have performed does not change this fact.

## II.    EXHIBITS

EXHIBIT A.      Declaration of Fredrick Hawkins
EXHIBIT B.      Declaration of Rodrick Cole
EXHIBIT C.      Email from Trish Garner
EXHIBIT D.      Email from "Senior Construction Manager"

---

[1] *Gandhi v. Dell Inc.*, A-08-CA-248 JRN, 2009 WL 1940144 (W.D. Tex. July 2, 2009) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs  have stated a cause of action or will prevail on the merits . . . ."); *see also Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995) and *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).

[2] *See Gandhi v. Dell Inc.*, A-08-CA-248 JRN, 2009 WL 1940144 (W.D. Tex. July 2, 2009) (citing *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008) (discussing how courts consider the disparate factual and employment settings of the individual plaintiffs at the second stage); *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 990 (C.D. Cal. 2006) (finding that defendants' arguments regarding differences in putative plaintiffs' job positions and duties are better suited for the more stringent second step of the § 216(b) collective action certification analysis)).

[3] *Jones v. AbClean, Inc.*, 2010 U.S. Dist. LEXIS 145462 (E.D. Tex. 2010) ("While requests to proceed directly to the second stage are sometimes granted, 'they are ordinarily only granted when discovery is largely complete and the matter is ready for trial.'").

EXHIBIT E.       Email from Michelle Shelton
EXHIBIT F.       Kandler Teksystems, Inc. Employment Contract and Hours
EXHIBIT G.       Bell Teksystems, Inc. Employment Contract and Hours
EXHIBIT H.       Email from Teksystems, Inc.
EXHIBIT I.       Truck Weight Limits (Chevy and Ford)

## III.    CERTIFICATION OF CLASS

5.      Plaintiffs show this Court that Plaintiffs and class members are similarly situated, victims of a unifying plan or policy or plan, and desire for other class members to join.[4]

**Similarly Situated Employees**

6.      "While the FLSA does not define the term "similarly situated," courts have held the plaintiffs need only show their positions are similar, not identical. The court should satisfy itself that there are other employees of the defendant who are 'similarly situated" with respect to their job requirements and pay provisions. Notice is appropriate if the court concludes there is "some factual nexus which binds the named plaintiffs and potential class members together as victims of a particular alleged [policy or practice].'"[5]

7.      Defendant roughly attempts to categorize Plaintiffs' testimony as relying on job descriptions and stating that three and four page declarations boil down to stating only the word "report" as each person's job duty. However, no job descriptions were referenced in the Plaintiff declarations, and the Plaintiffs affidavits actually coincide and show similar job duties. Even Defendant's arbitrary attempt to show three subclasses of Construction

---

[4] *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995).
[5] *Hickson v. United States Postal Serv.*, 2010 U.S. Dist. LEXIS 104112, *20 (E.D. Tex. 2010) (Hon. Judge Craven) (citing *Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613, 616 (S.D. Tex. 1979); *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991) and *Villatoro v. Kim Son Restaurant, L.P.*, 286 F.Supp.2d 807, 810 (S.D. Tex. 2003)).

Manager jobs (New Site Builds, LTE Projects, and Alarm Clearing) does nothing to defeat Plaintiffs' clear showing of similarly situated class members.

8. Defendant attempts to argue that duties vary and a Construction Manager is not a "cookie-cutter" position by using over-inflated job descriptions that are actually addressed directly by Plaintiffs' evidence.

9. One court eloquently explained: "[E]very class under § 216(b) will have differences; however, class members need only be similar, not identical. If Defendant's contentions that the class must be similar in almost all respects was to prevail, the intent behind class certification under §206(b) would be frustrated and the statute's class provisions would be effectively emasculated."[6]

10. For example, Plaintiffs Bell, Cole, and Hawkins directly address the term "redlining" and indeed it is a function shared by all declarants. Plaintiffs help explain that redlining is when a problem or deviation is required from a plan given from management, and someone physically shows how the plan needs to deviate.[7]  Even Defendant's witness Arnold states "[I]f the ice bridge … does not comport with the *required* routing, then I will redline the drawings to ensure that the equipment is moved to be in line *with the correct routing path*." Mr. Arnold's examples show redlining is simply identification of variances between a blue print and <u>physical</u> conditions at a site. Plaintiff obviously disagree regarding

---

[6] *Pendlebury v. Starbucks Coffee Co*., 518 F. Supp. 2d 1345, 1362 (S.D. Fla. 2007)

[7] See **Decl. Bell ¶ 4** ("If a problem was recognized I would redline the problem and approve or disapprove of the work. Approval or disapproval effectively meant that my recommendation or finding was sent to project management …"); **Decl. Hawkins ¶ 5, Decl. Cole ¶  4** ("Redlines were used to deviate from plans given by project management. Project management was required to review and approve of any deviation regardless of my "approval" or disapproval of a redlined plan.")

the discretion required, but more importantly the duty is common among all Construction

Managers. Counter to Defendant's indications, if a Construction Manager had other duties

they were given an additional title of "Senior" Construction Manager. As stated in an email

from Shawn Spurlock: "I have stepped down as the senior CM the job is not worth [it.] I

am going back to the field after tomorrow as a *regular* CM.[8] At this juncture we do not

have evidence related to what additional duties "Senior" Construction Manager's had, and

Defendant has not addressed such a title.

11.    The two declarations from Construction Manager 2s (Arnold and Thompson)

and the one Construction Manager 3 (Roebert), fail to state that their duties as Construction

Managers are unique or different from other Construction Managers. Instead they focus the

amounts of discretion involved in their position which speaks to the merits of the case and

is not appropriate at this time.[9]

12.    Defendants additionally cite *Thibault v. Bellsouth Telecomms., Inc.* to

support its position that Plaintiffs Bell and Greer were not similarly situated to the

prospective class.[10] However, Defendant's interpretation is less than skin deep. The

*Thibault* Court contrasted its ruling where almost identical facts led to the finding of

employee relationship where: "Unlike the welders, the splicers in *Cromwell* did 'not have

the same temporary, project-by-project, on-again-off-again relationship with their

---

[8] See Exhibit D- "Senior" CM stepping down.

[9] *See Gandhi v. Dell Inc.*, A-08-CA-248 JRN, 2009 WL 1940144 (W.D. Tex. July 2, 2009) (citing *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008) (discussing how courts consider the disparate factual and employment settings of the individual plaintiffs at the second stage); *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 990 (C.D. Cal. 2006) (finding that defendants' arguments regarding differences in putative plaintiffs' job positions and duties are better suited for the more stringent second step of the § 216(b) collective action certification analysis)).

[10] 612 F.3d 843, 848 (5th Cir. 2010).

purported employers.'"[11] Further, the employee in *Thibault* was in business for himself and among other factors not economically dependent on the job. Under the FLSA, an "employer" "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). A FLSA employer must comply with the FLSA's requirements for all the workers it "employs," a term defined as "includ[ing] to suffer or permit to work." 29 U.S.C. § 203(g).

13.     The only evidence presented to the Court regarding whether Bell and Greer are similarly situated as employees with the same duties and under the same policy is through the declarations of Plaintiffs. Bell and Greer detail that they worked the same job as other Construction Managers, reported to and were directed by Goodman, questioned and received responses about overtime from Goodman, and had time worked rejected from Goodman, and most importantly subject to the same policy regarding overtime.[12] Likewise, Defendant fails to acknowledge that the potential class requested in *Andel v. Patterson-UTI Drilling Co.*, was for individuals wrongfully categorized *as independent contractors*.[13] Such a determination of joint employer is not required from the *class* sought.

14.     Plaintiffs clearly establish that they worked in approximately sixteen states.[14] They have personal knowledge of extremely similar working conditions, shared by other Construction Managers.   Defendants ask the Court to find the Construction Manager

---

[11] Id at 850.

[12] Decl. Bell ¶ 3, 7-8 ("I personally questioned why we were not paid overtime to Defendant and received a response that we[']re salary and not entitled."); Decl. Greer ¶ 3, 7-8 (Hours tracked on Goodman's system

[13] 280 F.R.D. 287, 290 (S.D. Tex. 2012).

[14] Louis Vassallo worked in Florida, Missouri, Indiana, Tennessee, Georgia, and Illinois. Patrick worked in Pennsylvania, Virginia, West Virginia, Kentucky, Alabama, Mississippi, Tennessee, Louisiana, Georgia and South Carolina. Aaron Kandler worked in Michigan and Indiana. Timothy Greer and Eric Bell both worked in Michigan. Fredrick Hawkins worked in Michigan and Indiana. Rodrick Cole worked in Texas.

position too diverse to be "similarly situated," when Defendants themselves find the position similar enough to deem it exempt based on that title.[15]

**Unifying Policy or Practice**

15.     Defendants go against the great weight of the evidence to argue that no unifying policy existed over potential class members. They dismiss that the template used to hire Construction Managers labels the position "exempt" before an individual is even hired. Defendants rely on Arizona, Alabama and New Jersey Courts to state that the improper blanket classification of Construction Managers as exempt is not a sufficient policy.

16.     However, this Court recognized that job-classification cases are cases typically conditionally certified.[16] This is because each potential class member experienced the same policy of working over 40 hours a week and being denied overtime due to a policy of Defendant that classified Construction Managers as exempt. This is best shown through Trish Garner's email to Plaintiff Vassallo wherein she states: "Since your *position* is classified as an exempt salaried position, you are not eligible to receive 'overtime' pay. … Therefore, it is normal to ask an *exempt salaried employee to work additional hours* to get his/her job completed."[17] (emphasis added).

17.     Ms. Garner goes on to explain that "[i]f being an hourly position and being eligible to earn overtime pay is your preference, you may want to consider searching

---

[15] See Plaintiffs' Exhibit D to Motion to Certify, Construction Manager Template
[16] Hickson v. United States Postal Serv., 2010 U.S. Dist. LEXIS 104112, *18 (E.D. Tex. July 22, 2010) (Citing Castle v. Wells Fargo Fin., Inc., 2008 U.S. Dist. LEXIS 106703, 2008 WL 495705, *6 (N.D. Cal. 2008); Williams, 2006 U.S. Dist. LEXIS 50653, 2006 WL 2085312, *4-5 (exempt employees challenging their exempt status);
[17] See Exhibit C, Email from Trish Garner.

internally for an hourly *position* that may match you qualifications. (emphasis added).

Michelle Shelton, Sr. Manager Customer Program more bluntly states: "Louis: Exempt

employees to do not get overtime. We are required to do what is necessary to get the job

done. I don't understand your question[,]" when Vassallo asks about overtime for weekend

work.[18]

18.     To help demonstrate that this exemption was a policy related to the job

classification; on April 22, 2015, Counsel for Plaintiffs received a call and email from

Counsel for Teksystems, Inc. stating that Plaintiffs Bell and Kandler had actually received

overtime pay.[19] As stated in Plaintiff Bell's declaration, his job duties from his prior

employment with Goodman and current employment with Teksystems, Inc. are identical.

However, with Teksystems, he now is paid overtime,[20] where before Mr. Bell was told that

his position was not entitled to overtime by his manager at Goodman.[21]

19.     Similarly, Plaintiff Kandler, as stated in his Declaration, worked for two

weeks with Teksystem before being hired as a W-2 employee of Goodman. As shown, he

received overtime pay for two weeks[22], until hired by Goodman who discontinued overtime

and labeled him as exempt. Plaintiffs and potential class members are all part of a single

decision, policy or plan of Goodman and go well beyond mere averments. Plaintiffs are

not seeking a class based on employees labeled exempt as alleged by Defendants. Plaintiffs

seek a class based on individuals who worked more than 40 hours, as Construction

---

[18] See Exhibit E, Email from Michelle Shelton
[19] See Exhibit H, Email from Counsel for Teksystems, Inc.
[20] See Exhibit F, Employment Contract and Hours for Bell.
[21] See Decl. of Bell, ¶ **8.**
[22] See Exhibit G, Employment Contract and Hours for Kandler.

Managers, and were not paid overtime due to that position.

**Desire for a Class**

20.     The desire for this class, as well as the judicial economy of such a class favors the conditional certification. Plaintiffs' declarations lay out the common complaint related to Goodman's policy of working Construction Managers for long hours, nights and weekends with no overtime.[23] One such person was terminated after making such a complaint.[24]

## IV.     CONCLUSION

21.     Defendant attempts to show that the job of some Construction Managers are unique and vary from the declarations of seven nationwide Construction Managers. However, Defendant will no doubt argue just as strongly that the seven declarants all acted with equal independent and unique authority to defeat their claims if this Court denies the conditional certification of this class.

Respectfully submitted,

THE VETHAN LAW FIRM, PC


By: /s/ Charles M.R. Vethan
Charles M.R. Vethan
SBN:  00791852
J. Seth Grove
SBN: 24069833

---

[23] See Declaration of Patrick Kerr ¶ 7; Vassallo ¶ 4; Kandler ¶ 8; Greer ¶ 8, Hawkins ¶ 9.
[24] See Declaration of Patrick Kerr ¶ 6-7

8700 Crownhill Boulevard | Suite 302
San Antonio, Texas 78209
Telephone: (210) 824-2220
Facsimile: (210) 826-2223
cvethan@vathanlaw.com
ATTORNEY IN CHARGE FOR
PLAINTIFFS & CLASS MEMBERS

## CERTIFICATE OF SERVICE

This is to certify that on April 26 2015, a copy of the foregoing instrument was served upon all parties via the Court's electronic case filing system.

/s/ Charles M. R. Vethan
Charles M.R. Vethan