IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| LOUIS VASSALLO, PATRICK KERR TIMOTHY GREER, ERIC BELL and HALL, CAROL MEADOWS, JAMIE AARON KANDLER, on Behalf of , Themselves and All Others Similarly Situated <br><br> Plaintiffs <br><br> V. <br><br> GOODMAN NETWORKS, INC. <br> Defendant | § § § § § § § § § § § § § § | No. 4:15CV97 |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636. The following motions are before the Court:

**Plaintiff's First Amended Motion to Conditionally Certify Collective Action (Docket Entry # 33); and**

**Plaintiffs' Motion for Protection, Sanctions and Corrective Notice (Docket Entry # 43).**

The Court, having reviewed the relevant briefing and hearing arguments of counsel April 29, 2015, recommends Plaintiffs' motion to conditionally certify a collective action be **GRANTED**. Plaintiffs' motion for protection, sanctions and corrective notice is denied at this time.

**I. FACTUAL BACKGROUND**

Plaintiffs, Louis Vassallo, Patrick Kerr, Timothy Greer, Eric Bell, and Aaron Kandler individually, and on behalf of all others similarly situated ("Plaintiffs"), filed this collective action

against Goodman Networks, Inc. for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et. seq*. Goodman Networks, Inc. ("Defendant" or "Goodman"), provides network services and implementation to customers throughout the United States and Texas. Plaintiffs and the putative class members are former or current Construction Managers I, II, and III ("Construction Managers" or "CMs") at Goodman who routinely worked in several states across the United States in excess of forty hours in a work week.

Plaintiffs allege they were paid pursuant to a flat salary or wage without payment for overtime hours worked from September 2011 through the present. Plaintiffs bring this motion, requesting the Court: (1) conditionally certify this case as a collective action under 29 U.S.C. § 216(b) with respect to all of Defendant's current and former employees as CMs and who were paid pursuant to a flat salary with no payment for hours worked beyond forty hours before the filing of the complaint to the present; (2) authorize mailing of the proposed notice and consent forms to all current and former CM employees; and (3) require Defendant to produce the names and all known addresses, phone numbers, dates of birth, and email addresses for all class members so that notice may be implemented.

Defendant opposes Plaintiffs' motion, asserting Plaintiffs seek to conditionally certify a collective action of CMs who worked in various roles on approximately 40,000 projects, across eight Goodman markets, in twelve states. According to Defendant, the job duties and responsibilities among the CMs necessarily vary depending on multiple factors, including the type and phase of the construction projects they managed; the management and direction of the work of crews; their authority to hire and fire employees; and their level of skill, experience, and decision-making authority. The CM role is not a "cookie cutter" position, according to Defendant. (Docket Entry #

40 at pg. 6). Thus, Defendant asserts Plaintiffs fail to show the putative class members are similarly situated. Defendant further asserts Plaintiffs fail to identify a nationwide policy that violates the FLSA. Finally, Defendant contends the proposed notice is deficient.

## II. LEGAL STANDARDS

### A. The FLSA

"The FLSA requires that non-exempt employees who work more than forty hours in a work week must be paid one and one-half times their 'regular rate' of pay." *Gagnon v. United Technisource Inc.*, 2010 WL 2106618 (5th Cir. 2010)(citing 29 U.S.C. § 207(a)). Under the FLSA, an action to recover alleged unpaid overtime compensation may be brought by "one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §216(b).

### B. Two-stage approach to determining whether to conditionally certify a collective action

District courts have the discretionary power to conditionally certify a collective action and to authorize the sending of notice to potential class members pursuant to §216(b), but certification is not mandatory. *Hoffman-La Roche, Inc. vs. Sperling*, 493 U.S. 165, 169 (1989). Although the Fifth Circuit Court of Appeals has expressly refused to endorse a specific method for determining whether a collective action should be conditionally certified under 29 U.S.C. § 216(b), the majority of the courts within the Fifth Circuit have adopted the two-stage approach found in *Lusardi vs. Xerox, Corp.*, 118 F.R.D. 351 (D. N.J. 1987). *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995)(noting acceptable approaches include either the *Lusardi* approach or the "spurious class action" approach), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90

(2003).¹ Here, the Court will apply the *Lusardi* approach, which is a two-stage inquiry involving a "notice stage" and a merits or decertification stage.

**1.      Notice stage**

"In the notice stage, the court makes a decision, based on the pleadings and affidavits, on whether notice of the action should be given to putative class members. This decision typically results in 'conditional certification' of a representative class." *Allen v. McWane, Inc.,* 2006 WL 3246531, at *2 (E.D.Tex. Nov.7, 2006). The plaintiff bears the burden at the notice stage, and the plaintiff must provide competent evidence to show that a similarly situated group of potential plaintiffs exists. *Casanova v. Gold's Texas Holdings Group, Inc.*, 2014 WL 6606573, *2 (W.D.Tex. November 19, 2014). "At the notice stage, 'the [similarly situated] standard requires nothing more than substantial allegations that the putative class members were victims of a single decision, policy, or plan." *Gallender v. Empire Fire and Marine Ins. Co.,*, 2007 WL 325792, at *1 (S.D.Miss. Jan.31, 2007)(unreported) (quoting *Allen,* 2006 WL 3246531, at *2).

"Specifically, the first-stage test requires a minimal showing by the plaintiff that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit." *Casanova,* 2014 WL 6606573, at *2 (quoting *Walker v. Honghua Am., LLC,* 870 F.Supp.2d 462, 465–66 (S.D.Tex.2012) (internal citations and quotation marks omitted). "As the court's decision is usually based only on

---

¹ In *Mooney*, the Fifth Circuit found it unnecessary to choose between the tests because it was apparent from the record that, no matter which methodology was utilized, the Fifth Circuit could not say the district court abused its discretion in finding the "opt-in" plaintiffs were not similarly situated. *Mooney*, 54 F.3d at 1216.

the pleadings and affidavits, the standard is lenient and typically results in conditional certification." *Id.*

However, conditional certification is not automatic. *Casanova,* 2014 WL 6606573, at *2. If the plaintiffs cannot show, based on the pleadings and any affidavits which have been submitted, that the putative class members were together the "victims of a single decision, policy, or plan" that violates the FLSA, the court should not conditionally certify the class. *Mooney*, 54 F.3d at 1214, n. 8. "If the court finds the potential plaintiffs to be similarly situated, the court should conditionally certify the class, provide notice to potential class members, allow time for the putative class members to opt-in, and allow adequate time for discovery." *Gallender,* 2007 WL 325792, at *1 (citing *Mooney*, 54 F.3d at 1213-14).

**2. Merits stage**

The second stage of the two-step approach found in *Lusardi* is "typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Mooney*, 54 F.3d at 1214. The scrutiny applied in the second stage is much more rigorous than that of the notice stage. *Gallender*, 2007 WL 325792, at *2. If the claimants are similarly situated, the district court allows the representative action to proceed to trial, but if the claimants are not similarly situated, "the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice." *Mooney*, 54 F.3d at 1214. The original plaintiffs then proceed to trial on their individual claims. *Id.* Final certification is rarely granted. *Gallender*, 2007 WL 325792, at *2.

## III. DISCUSSION

**A.     Whether there is a reasonable basis for Plaintiffs 'assertions that aggrieved individuals exist**

Plaintiffs seek to certify a CM class based on the allegation these employees were improperly classified as exempt from the overtime compensation requirements of the FLSA, while in reality their work duties and responsibilities did not properly qualify them for exempt status. To qualify for exempt status, an employee's "primary duty" must be the performance of exempt work. 29 C.F.R. § 541.700 (a). "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's jobs as a whole." *Id.* Factors to consider when determining the primary duty of an employee include "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.*

In this case, Plaintiffs allege as follows:

25. As Construction Managers, Plaintiffs and Class Members' primary duties include, but are not limited to, driving to and from worksites over vast distances, collecting information and reporting findings to designated managers. Construction Managers are also expected to answer emails and take conference calls with management while driving long distances between worksites or delay very long travel and extend employee workdays several hours. Construction Managers regularly and routinely must and are expected to stay in motels and hotels on trips between worksites and expected to work 6 and 7 days a week.

\* \* \*

28. Accordingly, Plaintiffs and Class Members primary job duties at all times were those of a non-exempt employees. When asked about overtime compensation,

6

> representatives of Defendant have simply stated that Construction Managers are 'exempt' and not entitled to over-time. However, other than a title of 'manager' attached to the Plaintiffs and Class Members' job title, no basis of an exemption has been offered by Defendant.
>
> 29. During the relevant time period, Defendant compensated Plaintiffs and Class Members a flat salary with no compensation for hours worked past forty hours. However, Plaintiffs and Class Members are regularly required to work on weekends at the sole discretion of a Supervisor, and not paid for any additional time over 40 hours. For any hours worked over 40 hours, Defendants failed to pay overtime in accordance with the FLSA. Construction Managers are required to work over 60 hours per week without receiving the required overtime compensation as mandated by the FLSA based on their effective rate pursuant to FLSA.

(Second Am. Compl., ¶¶ 26, 28-29). Plaintiffs assert CMs' essential functions, as defined in job postings by Defendant, are primarily to be the "eyes at multiple sites and report progress and needs to project managers who make final decisions." (Docket Entry #33 at pg. 5). Plaintiffs assert none of the exemptions provided by the FLSA are applicable, and Defendant improperly classified the CMs as exempt from the FLSA.

In support of conditional certification, Plaintiffs rely on, among other things, Defendant's Job Description for "Construction Manager III," wherein Goodman classifies the position as FLSA "Exempt." (Docket Entry # 33, Ex. D at pg. 1). Among other things, the following are listed as "physical demands" of the Construction Manager III position:

- Ability to travel between job sites daily is a must; frequent overnight travel or longer is also a must.
- Must be willing to work days/nights/weekends depending on project demands.

*Id.* at pg. 2. According to Plaintiffs, the job duties of this template mirror required duties in job postings on Defendant's website for Construction Managers II.

Defendant asserts its decision to classify CMs as exempt from the FLSA's overtime

provisions is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders putative class members similarly situated. Plaintiffs do not rely only on Defendant's classification decision. In further support of their motion, Plaintiffs submit as evidence five declarations from the named plaintiffs in this case.

The five declarants all state they worked for Defendant; were given the title of CM I, II, or III and performed similar work with similar job duties; were routinely expected to stay in motels between worksites and work six to seven day per week; and were not paid for time past forty hours even though Defendant tracked time in excess of forty routinely. Declarants state Goodman management was aware of the working hours and conditions and stated it was an expected part of the job. As an example of this alleged policy, Plaintiffs attach a pay stub for Kerr showing payment for eighty hours in a two-week period when 107 hours were submitted on Defendant's online time tracker.

Declarants further state, in various ways, they did not have the authority to hire, fire, or make decisions related to contractors or vendors assigned; their duties focused on relaying information to persons with authority to make these decisions; if a decision held any importance related to the job, a manager's approval and direction was required; their duties were not different in any discernible way from other employees deemed as Construction Managers; and there was no distinction in duties, responsibilities, or obligations between the work performed during the week and the work performed on the weekend.

In *Casanova*, 2014 WL 6606573, the plaintiffs alleged Gold's Gym improperly classified them and other personal trainers as exempt from the FLSA. The court declined to determine at the notice stage "whether personal trainers are exempt as a matter of law because this determination is

8

a fact specific inquiry, and at this stage of the proceedings, it would be inappropriate to rule on the merits." 2014 WL 6606573, at *3. The record before the court left "open the question of the legality of Defendant's pay policies;" thus, the court could not find at the notice stage the plaintiffs' claims were groundless. *Id.* The court found there was a reasonable basis for the plaintiffs' claims that the commissions earned were not true commissions that would exempt them from the FLSA requirements. *Id.* at *4. The court found the plaintiffs had met their "low burden at the notice stage of demonstrating that there is a reasonable basis for crediting their claims that aggrieved individuals exist." *Id.*

Here, Plaintiffs' complaints relate to a common Goodman policy of job classification: they were all not paid overtime for work over forty hours a week. This is further demonstrated by an email from Trish Garner to Vassallo in response to Vassallo's hotline complaint, wherein she states as follows:

> Since your position is classified as an exempt salaried position, you are not eligible to receive 'overtime' pay. An exempt employee receives a set salary for all hours worked during the workweek, with the expectation that the employee do what is necessary for completion of their work. Because exempt salaried employees have more flexibility in their time, there could on occasion be times when the employee would have to work outside of a regular schedule. Therefore, it is normal to ask an exempt salaried employee to work additional hours to get his/her job completed.
>
> If being in an hourly position and being eligible to earn overtime pay is your preference, you may want to consider searching internally for an hourly position that may match your qualifications. It is imperative that you understand that overtime pay is not guaranteed to hourly employees.

(Docket Entry #44, Exh. C). When Vassallo asked Michelle Shelton, Sr. Manager Customer Program, about overtime for weekend work, she replied: "Exempt employees . . . do not get overtime. We are required to do what is necessary to get the job done." (*Id*., Exh. E).

The Court does not find at this notice stage that Plaintiffs' claims are groundless. Not only is there a reasonable basis for Plaintiffs' claims, but there is also evidence aggrieved individuals other than the named plaintiffs exist. In his declaration, Kandler states the issue of "hours and not being paid" "became a joke on the Sunday 7:30 am conference calls" between the CMs. (Kandler Decl., ¶8). According to Greer, in conversations he has had with other CMs, "the amount of hours required with no other compensation was a common complaint." (Greer Decl., ¶8). When he personally questioned why CMs were not paid overtime, Greer was only told that Construction Managers do not get overtime. *Id.*

The Court finds Plaintiffs have met their burden at the notice stage of demonstrating there is a reasonable basis for crediting their claims that aggrieved individuals exist.

B.  **Whether the aggrieved individuals are similarly situated to Plaintiffs in relevant respects**

Plaintiffs state there are approximately 300 putative class members nationwide similarly situated to Plaintiffs. Generally speaking, "Construction Managers are regularly and routinely expected to stay in motels in remote areas between worksites and work six to seven days a week. Management was aware of the working hours and conditions and stated on many occasions it is an expected part of the job." (Vassallo Decl., ¶4). Plaintiffs assert they did not get paid at all for time routinely worked over 40 hours per week.

Specifically, Plaintiffs' evidence demonstrates as follows:

- Vassallo worked as a Construction Manager II and III in at least six states for Defendant. His Project Manager, Aaron Keener, wrote a letter indicating Vassallo would not be allowed weekends off in order to do "Pro Bono Charity work for his community." According to the letter, "Vassallo is an employee in good standing with our company and as a normal part of his duties is required to work and travel up to 14 hours daily and work both Saturday and Sunday." (Docket Entry 33, Exh. I).

10

- Patrick Kerr, a Construction Manager III, worked in ten different states and encountered the same policy and complaints. He recalls two times when persons directly addressed the hours, safety, and lack of compensation for CMs with other project managers, executives, and even the CEO of Defendant. One such questioning led to the termination of an employee. (Kerr Decl., ¶¶ 6-8).

- CMs Timothy Greer, Aaron Kandler, and Eric Bell relate similar experiences.

In response, Defendant asserts Plaintiffs cannot rely on general job descriptions to show they are similarly situated. Defendant submitted declarations as evidence of differences between job duties, job locations, task assignments, and varying levels of experience. According to Defendant, actual CM job duties vary considerably and depend on multiple factors, including issues such as project type. Specifically, Defendant focuses on differences between each CM's actual job duties, responsibilities, and levels of authority, asserting CMs may exercise varying levels of discretion and have varying levels of compensation. According to Defendant, some CMs may handle specific aspects of all projects in an area, whereas others may be responsible for each phase of particularized projects.

Defendant's argument misses the mark "because it overlooks the lenient standard under *Lusardi* for deciding whether to certify collective actions under § 216(b)." *Owen v. Golf & Tennis Pro Shop, Inc.*, 2010 WL 3859640, * 3 (E.D.Tex.2010)(unreported). The relevant inquiry is whether the potential class members performed the same basic tasks and were subject to the same pay practices. *Id*. (citing *Allen*, 2006 WL 3246531, at * 3). As long as the basic tasks and pay policies are the same, it is immaterial that the employer's different locations may have their own rules and procedures. *Owen*, 2010 WL 3859640, at *3. Notice is appropriate if the court concludes there is "some factual nexus which binds the named plaintiffs and potential class members together as

victims of a particular alleged [policy or practice]." *Allen,* 2006 WL 3246531, at *2 (allowing conditional certification based on the fact that "all facilities were owned by the same employer," and the "employees had similar pay structure because they were all paid hourly").

Here, Plaintiffs have sufficiently demonstrated at this time they and the other CMs shared the same basic job duties and were subject to the same pay practices. Despite Defendant's emphasis on the variations among CMs' job duties and its insistence that Plaintiffs' claims cannot be determined through single, representative proof, Plaintiffs' declarations, combined with the common job descriptions stated in Defendant's own postings, sufficiently establishes a "preliminary factual showing" that the basic tasks at issue performed by the CMs were similar. *See Mooney,* 54 F.3d at 1213 (noting the evidentiary standard for conditional class certification is a "fairly lenient one"); *In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III),* 2012 WL 3308880, at *27 (S.D. Tex. Aug. 10, 2012) ("Courts have repeatedly stressed that Plaintiffs must only be similarly—not identically—situated to proceed collectively ... [i]t is only when the job duties of putative class members vary significantly that collective action certification should be denied.") (citing *Falcon v. Starbucks Corp.,* 580 F.Supp.2d 528, 534 (S.D. Tex. 2008)).

Finally, Defendant asserts not all Plaintiffs were employed by Goodman; Bell and Greer were employed by professional staffing agencies. In *Kelly v. Healthcare Services Group, Inc*. 2014 WL 3612681, *3 (E.D.Tex. July 22, 2014), the court allowed conditional certification despite the defendant's allegation that 16% of putative class members were prohibited by collective bargaining agreements from performing any manual labor. The court noted to the extent such class members exist, they are likely not class members of the "Salaried AM Class." *Id*. "However, because evidence was scant as to the specific restrictions imposed by the alleged collective bargaining

agreement, the Court directed the parties to conduct more discovery and allowed Defendant to reurge this issue at the decertification stage." *Id.*

Similarly, to the extent any individuals are later found to be independent contractors, Plaintiffs represent this will not affect the class, which will consist only of Goodman employees. After discovery, Defendant may raise this issue. At this first notice stage, Plaintiffs have put forth facts showing they are similarly situated with respect to their job requirements and pay provisions; and that is all that is required for conditional certification. *Lee v. Veolia Es Industrial Sergices, Inc.*, 2013 WL 2298216, *13 (E.D.Tex. May 23, 2013)(unreported). Therefore, Plaintiffs have met their burden of demonstrating the other potentially aggrieved individuals would be similarly situated.

## C. Whether those individuals want to opt-in to the lawsuit

Finally, Plaintiffs have shown there are others who will likely desire to opt in. According to Vassallo, discussions he has had with other CMs "indicated interest in challenging [Goodman's] policy." (Vassallo Decl., ¶4). Kerr states he has personally spoken with "numerous individuals who have expressed an interest in joining this specific case because of the same working conditions and lack of compensation." (Kerr. Decl., ¶12). Because Plaintiffs have shown there likely are others who seek to opt-in to this litigation, Plaintiffs have met the necessary showing at the notice stage.

The Court finds Plaintiffs have fulfilled the three requirements for collective action certification and notice should issue.[2]

---

[2] Defendant asserts the Court should deny Plaintiffs' motion for the separate reason that Plaintiffs attempted to engage in their "own campaign to solicit employees to join the lawsuit" by posting misleading messages on the Internet and sending emails. The Court notes Plaintiffs have filed a separate Motion for Protection, Sanctions, and Corrective Notice, wherein they assert Defendant has attempted to "usurp the Court's power by coercing potential opt-in [plaintiffs] to disregard their rights under the FLSA in exchange for two weeks' severance pay." (Docket Entry # 43 at pg. 2). According to Plaintiffs, Defendant recently laid off sixty Construction Managers

The Court **orders** the parties to confer and submit a draft of the proposed notice by **June 15, 2015,** for the Court's approval. Any issues the parties cannot agree upon should be submitted to the Court for consideration.

The Court also **orders** Defendant to provide Plaintiffs' counsel with the addresses, phone numbers, dates of birth, and email addresses, where available, of the potential class members.[3] Such disclosure shall occur within twenty days. Accordingly, it is

**RECOMMENDED** that Plaintiff's First Amended Motion to Conditionally Certify Collective Action (Docket Entry # 33) be **GRANTED**.

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest

---

and offered each one a "Confidential Separation Agreement and General Release," which provided that in exchange for two weeks' pay the individual would waive all rights under the FLSA, including the ability to join a class action. In its response to Plaintiffs' motion, Defendant represents none of the former Construction Managers have actually signed the Severance Agreements, and unless and until they do, Plaintiffs lack standing to challenge the validity of the release agreements. Additionally, because the Court is ordering the parties to meet and confer on a proposed notice, there is no need at this time to authorize a separate "corrective notice."

[3] Defendant asserts it is inappropriate to order the disclosure of the phone numbers and email addresses of potential plaintiffs. Defendant may move the Court to enter a protective order in this case to cover any disclosures made to Plaintiffs.

injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir.1988).

**ORDERED** that Plaintiffs' Motion for Protection, Sanctions and Corrective Notice (Docket Entry # 43) is **DENIED** at this time.

**SIGNED this 20th day of May, 2015.**

/s/ Caroline M. Craven
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE