IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| LOUIS VASSALLO, PATRICK KERR, TIMOTHY GREER, ERIC BELL and AARON KANDLER on Behalf of Themselves and All Others Similarly Situated, | § § § § § | |
| Plaintiffs | § § § | |
| v. | § | CIVIL ACTION NO. 4:15-cv-00097 |
| GOODMAN NETWORKS, INC. | § § § | |
| Defendant. | § | |

**AFFIDAVIT OF JOSEPH L. LANZA**

STATE OF TEXAS §
BEXAR COUNTY §

Before me, the undersigned notary, on this day personally appeared Joseph L. Lanza, the affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

1. "My name is Joseph L. Lanza. I am over 21 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and all such facts are true and correct.

2. **Qualifications**: I am an attorney licensed to practice in the State of Texas. I have been practicing law for approximately 24 years. I am licensed to practice in Texas, and admitted to practice before the United States District Courts for the Southern and Eastern Districts of Texas, the District of Colorado, and before the United States Courts of Appeals for the Fifth and Ninth Circuits. I have tried cases to a verdict, and have argued before the Fifth and Eleventh Circuit Courts of Appeals, and several state appellate courts, including the First and Fourteenth Courts of Appeals, and the Texas Court of Criminal Appeals.

3. I have been practicing in the San Antonio Metropolitan Statistical Area ("MSA") for the last three-and-a-half years. Prior to that, I practiced in the Houston MSA for approximately 20 years. Throughout my career, I have litigated matters in the Dallas, San Antonio and Houston MSAs, and throughout Texas. I am familiar with the prevailing rates in the Dallas, San Antonio and Houston MSAs.



EXHIBIT
A

4. I have been with VLF since July 2012. I currently manage The Vethan Law Firm's ("VLF's") San Antonio office.

5. I am familiar with the reasonable and customary hourly rates charged by lawyers in San Antonio, Houston, Dallas, and Texas, and I am familiar with the reasonable and customary hourly rates charged for wage and overtime litigation involving issues similar to those issues tried in this case. I am also familiar with prevailing hourly rates in each of these MSAs for cases involving complex and multiparty litigation, in the commercial, labor-employment, fiduciary duty, member/shareholder, consumer, and insurance fields. The rates charged by VLF are comparable to the hourly rates charged for similar cases in Houston, Dallas, and San Antonio, and such rates are reasonable and necessary to prosecute similar wage and overtime cases in those regions.

6. I am familiar with the lodestar methodology of analyzing billing records of work performed by attorneys and paralegals in litigation in Houston, Dallas, and San Antonio, Texas.

7. **Case Involvement**: Plaintiff Louis Vassallo retained VLF to represent him in this suit against the Defendant Goodman Networks, Inc. for failure to pay overtime. Plaintiffs Patrick Kerr, Timothy Greer, Eric Bell, Fredrick Hawkins and Aaron Kandler later joined as plaintiffs. Sixty-one other individuals later joined as collective action members and six were later dismissed.

8. As the managing attorney of VLF's San Antonio office, I personally and directly supervised the attorney who did the principal amount of work on this case, Jonathan Seth Grove, and have personal knowledge of this case and the work performed.

9. Charles M.R. Vethan, as VLF's managing partner, also personally supervised Mr. Grove's work. Mr. Vethan has been licensed to practice law in the State of Texas for 22 years, and in the State of California for two years. He is board certified in Civil Trial Law and Consumer and Commercial Law by the Texas Board of Legal Specialization. He is one of fewer than twenty attorneys in the State of Texas who hold dual certifications in these specialties, and is rated AV Preeminent by Martindale Hubbell. He is admitted to practice before the United States District Courts for the Eastern, Western, Northern, and Southern Districts of Texas, and before the United States Court of Appeals for the Fifth Circuit.

10. Exhibit C attached to Plaintiff's motion is a true and correct copy of VLF's billing report for this matter, with redactions for privileged remarks in the billing entries. Exhibit C also shows time written off using the lodestar method,

discussed more fully below. Time written off is struck through to distinguish it from time not written off.

11. **<u>Methodology</u>**: I applied lodestar methodology by first determining the reasonable number of hours expended on the case and the reasonable hourly rates of the participating attorneys.

12. I reviewed the time records detailing the fees and expenses in this matter styled Civil Action No. 4:15-CV97-LG-CMC, *Louis Vassallo, Patrick Kerr, Timothy Greer, Eric Bell, and Aaron Kandler on behalf of themselves and others similarly situated v. Goodman Networks, Inc.*, in the United States District Court, Eastern District of Texas, Sherman Division, and which are reflected in the billing report attached to this affidavit. I am familiar with the facts of this case and work performed in connection with this case. The majority of the itemized attorney time spent on this case was performed primarily by Mr. Grove under my supervision, or under the supervision of VLF's managing shareholder, Charles M.R. Vethan. Other attorneys who contributed included Joseph Colvin, Diren Singhe, Olivia Mallary and Robert Petersen.

13. In determining the reasonable number of hours expended I exercised "billing judgment" by eliminating or writing off hours that were redundant, excessive, or unproductive. I also eliminated or wrote off billing entries that were vague or incomplete, or represented block billing, and entries that reflected work that was clerical, secretarial, or administrative in nature. Finally, I eliminated or wrote off paralegal work that was not similar to work typically performed by attorneys.

14. Additionally, in reaching my conclusion, I considered the following factors: (a) the time and labor involved; (b) the novelty and difficulty of the questions; (c) the skill requisite to perform the legal services; (d) the preclusion of other employment by the attorney due to the acceptance of the case; (e) the customary fee; (j) whether the fee is fixed or contingent, (g) the time limitations imposed by the client or the circumstances; (h) the amount involved and the results obtained; (i) the experience, reputation, and ability of the attorneys; (j) the undesirability of the case; (k) the nature and length of the professional relationship with the client; and (l) awards in similar cases.

15. In considering the foregoing factors, I was guided by the Fifth Circuit's opinion in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), as well as by the express approval of the use these factors by the Texas Bar Association and the Texas Supreme Court. *See Arthur Anderson & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); TEX. DISCIPLINARY R. PROF. CONDUCT 1.04, reprinted in TEX. GOV'T CODE ANN., tit. 2, subtitle G appendix (State Bar Rules, art. X, §9).

16. **<u>Billing Practices and Policies, Attorney Skill, Experience, and Time</u>**: I have personal knowledge of the Firm's billing practices and policies, its records practices as relates to billing, and all of the Firm's billing records in this case. VLF creates billing records on a contemporaneous basis using a software program designed to track attorney time. The billing entries are made by the person performing the task, so the time records are based on personal knowledge. VLF's billing records are created in the ordinary course of business. It is the regular course of VLF's business practice for an employee or agent with knowledge of the acts or events recorded to make the record. The billing entries were made at or near the time reflected, or reasonably soon thereafter. Time entries are recorded in 1/10th hour increments.

17. As previously stated, much of the itemized attorney time spent on this case was performed primarily by Mr. Grove under my supervision. Mr. Grove was licensed to practice law in the State of Texas in November 2009. Mr. Grove has practiced in the San Antonio MSA for approximately six-and-a-half years, and has practiced labor and employment, commercial, business, and real estate law. Mr. Grove has litigated FLSA cases.

18. All VLF attorneys making billing entries are identified by their initials. Their names and identifying initials, are set forth below:

| | |
|---|---|
| Charles M.R. Vethan | CMR |
| Joseph L. Lanza | JLL |
| Jonathan Seth Grove | JSG |
| Diren W. Singhe | DWS |
| Joseph F. Colvin | JFC |
| Andrew J. Walker | AJW |
| David L. Bergen | DLB |
| Robert Y. Petersen | RYP |
| Olivia C. Mallary | OCM |

19. In addition to myself, Mr. Vethan, and Mr. Grove, the attorneys assigned to this case are qualified by education, experience, and training to perform the legal services required, have knowledge of the legal procedures and substantive law involved, and performed services that were reasonable and necessary. Copies of curriculum vitae for Mr. Vethan, Mr. Grove, Mr. Colvin and myself are attached hereto as Exhibit I and incorporated by reference.

20. Based on my 24 years of professional experience, the rates are commensurate with the rates for attorneys with the same level or experience working on complex, multiparty litigation matters in the Houston, San Antonio and Dallas MSAs.

21. **Paralegal Time**: All of the paralegal / legal assistant time was performed under J. Seth Grove's supervision, or my supervision. The paralegals and legal assistants assigned to this case (1) are qualified by education, experience, and training to perform the services required, (2) have knowledge of the legal system, principles, and procedures, (3) were supervised by an attorney, (4) performed tasks that are traditionally done by an attorney, and (5) performed services that are reasonable and necessary.

22. The paralegals who worked on the case, and their identifying initials, are set forth below:

| | |
|---|---|
| Kimberly A. Jalifi | KAJ |
| Jesse S. Lopez | JSL |
| Elizabeth "Liz" | EMA |
| David E. Guillen | DEG |
| Sean J. Ramos | SJR |
| Megan L. Ruffin | MLR |
| Monica D. Carter | MDC |

23. VLF's Paralegals typically bill at $250 per hour. VLF's legal secretaries typically bill at $100 per hour. The rates charged by VLF's paralegals are on a par with rates charged for similar services of paralegals with similar skills in the Houston and Dallas MSAs.

24. **Total Time Claimed and Total Time Written Off**. The total number of hours expended by attorneys and paralegals on this case is 2,552.4 hours. The total attorney's fee is $886,520.31 before writing off any time. VLF is writing off 359.9 hours, leaving a total of 2192.7 hours of attorney and paralegal time. The final total fee is $803,025.31. The total amount of fee written off is $83,495.

25. ***Johnson* Factors**: In performing my lodestar analysis, I took into consideration the *Johnson* factors, which are discussed below.

26. Time and labor involved. The lodestar method accounts for the time and labor involved. Nonetheless, as shown by the billing summary, this lawsuit was labor intensive. Over one million documents were produced by Defendant. These documents were reviewed and determinations made as to whether they contained information relevant to the number of hours worked, and information related to various exemptions asserted as affirmative defenses by Defendant, which had to be reviewed. Correspondence between counsel was extensive, particularly regarding the production of documents. Though several motion to compel were prepared, only one was filed after Defendant agreed to produce relevant documents. Finally, three motions for partial summary judgment on discrete issues were prepared, but not filed at defense counsel's request, prior to

mediation. Copies of the proposed motions were provided to counsel prior to mediation, however.

27. Defendant took 10 depositions in 5 states—Texas, Tennessee, Michigan, Missouri, and Georgia. Additionally, the time and labor involved in the case was complicated by the bankruptcies of three of the plaintiff Kerr and class members Greiner and Bostwick. Plaintiffs took 2 depositions of the Defendant's corporate representatives in Dallas, Texas. I would further note that fees billed during travel amounted to $37,620. Courts have held that an attorney may recover his fees for time spent travelling, particularly when travel precludes other work.

28. Novelty and difficulty of questions. Whether the Construction Managers were exempt from the FLSA's overtime requirements was a hotly contested issue that was by no means certain. At the outset, one key case from the Southern District of Texas, *Self v. Meritage Homes Corp.*, 2014 U.S. Dist. LEXIS 70941 (S.D. Tex. May 23, 2014), and several opinion letters from the U.S. Department of Labor appeared very unfavorable to Plaintiffs' legal position. Counsel for Plaintiffs' had to diligently and ethically overcome the challenges and risk of dispositive relief presented by this seemingly negative authority in order for Plaintiffs to reap a favorable settlement.

29. The Court in *Meritage* treated construction managers for a home builder as exempt under the FLSA as "administrative workers." All parties knew that there were some similarities between some of the tasks performed by the construction managers in *Meritage* and those performed by CMs at issue in this case; there were also important differences that this Firm had to specifically identify and credibly present.

30. Further, the opinion letters from the U.S. Department of Labor suggested a possible trend over time toward treating employees who *interacted* with subcontractors, coordinated supply and equipment deliveries, scheduled payments, and the like, as increasingly qualifying for the administrative exemption under the FLSA, whereas, in contrast those involved primarily in merely *inspecting* progress were not.

31. An application of the administrative exemption would have been fatal to Plaintiffs' claims. Because FLSA exemption inquiries are fact intensive, the considerable time, effort and legal skill of specialized and experienced litigators was required to locate and develop evidence and legal authority for the proposition that the Plaintiffs in this case were as CMs, by analogy, closer in legal status to workers who merely inspect and verify work, as opposed to the administratively exempt employees who engage in direct interaction and oversight.

32. Finally, the facts in this case were inordinately difficult to support with ordinary and customary evidence, requiring deep dives into source material technical data in order to establish hours worked. In this case, most of the CMs indicated that Defendant discouraged accurate reporting of hours, or rejected accurately reported hours. This meant that evidence of hours would not be as simple as adding up time cards, as would generally be expected. Prior and up to mediation, Plaintiffs expended resources to develop a model combining GPS data from the vehicles driven by Plaintiffs in the field, timestamps on email exchanges, and call times from cell phone records in a novel fashion to demonstrate hours actually worked on the basis of raw source data.

33. Additionally, it was necessary to calculate multiple overtime rates for each of the plaintiffs and collective class members in this case, taking into account varying factors such as whether defendant did or did not act in good faith when misclassifying plaintiffs as exempt, or willfully misclassified them to avoid paying overtime. The multiple amounts had to be calculated and incorporated into a spreadsheet showing the varying rates. The spreadsheet attached as Exhibit E is a true and correct copy of the spreadsheet created by the firm's senior paralegal, Monica Carter.

34. Preclusion of other employment by the attorney due to acceptance of the case. As the Court can see from the billing statements, work on the case was very extensive, involving attorneys and paralegals in all of VLF's offices. Charles Vethan, Joseph Colvin, Andrew Walker and David Bergen all worked out of the Houston office. Joseph Lanza, Seth Grove, Robert Petersen, and Oliva Mallary worked out of the San Antonio office, and Diren Singhe worked out of the Dallas office. Counsel was precluded from undertaking other work due to the time intensive nature of the case. VLF's San Antonio office turned away one potential FLSA class action due to the amount of work done on this matter, and approximately a third of all hours worked by VLF's San Antonio office's in 2015 and 2016 were devoted to this matter alone.

35. The customary fee. The customary fee was discussed, above. In this FLSA matter however, the customary fee is determined on a contingency as described more particularly in paragraph 36 below.

36. Whether the fee is fixed or contingent. The fee in this case was contingent. This case entailed significant risk factors for the Plaintiffs' counsel, including the risk that the CMs would be found to be exempt under the FLSA, discussed above. Plaintiffs' counsel took this matter on a contingency basis because no single plaintiff could afford to pay the attorney's fees associated with this matter and contingency arrangements are typical for FLSA cases. VLF's negotiated contingency percentage was forty percent (40.0%) of the Gross Recovery as set forth in VLF's executed engagement agreements with each of the Plaintiff

representatives. VLF also agreed to front the cost of all expenses in this case whether for travel, court costs, or depositions. VLF understood there were risks when accepting representation in this matter. Specifically, VLF understood Defendant would argue the Plaintiffs were exempt. VLF understood that it was possible the Plaintiffs would receive nothing for their claims and every hour committed by VLF to this case would produce no value. While VLF does undertake matters on an hourly basis at a set negotiated rate with each of its clients, VLF took this matter only because VLF hoped the recovery in this matter would exceed the potential hourly rate VLF charges its clients who pay on an hourly basis. Only the potential for a risk premium would induce VLF or any other firm undertaking a FLSA collective action to take a matter of this kind. Collective Actions are time consuming and expensive matters to undertake, and there are very few firms in the state of Texas with the ability to take such risks.

37. Limitations imposed by the client or the circumstances. The clients, multiple employees engaged in highly mobile occupations all over the region, required significant accommodation on the part of the Firm in order to obtain necessary evidence and maintain proper communications. Additionally, obtaining documents, signed responses to interrogatories, and preparing for trial were more difficult than a typical matter with only a few plaintiffs.

38. The amount involved and the results obtained. I am of the opinion the settlement is an excellent result. In my professional opinion, assuming the Plaintiffs had their best day in court the total damages model was approximately $3,000,000.00 exclusive of any award for attorney's fees. However, as discussed, there was significant risk the Plaintiffs would recover nothing. Additionally, there were risks the Court would not make a "willful" or "intentional" finding which provides for a three-year statute of limitations instead of a two-year statute of limitations, thereby eliminating many of the Plaintiffs from the collective action and reducing the overall damages model down to approximately $1,800,000.00. Additionally, there was a risk the Court could find "good faith" on Defendant's part and reduce or eliminate the award of additional damages provided by the FLSA thereby reducing the damage model by half to $900,000.00. When considering each of these possibilities and the relative risks and assumptions of each, the total settlement of $2,000,000.00 was more likely than not better than Plaintiffs' could have expected to do at trial.

39. Experience, reputation, and ability of the attorneys. This factor is addressed above.

40. Undesirability of the case. FLSA cases are frequently seen as undesirable because amounts recovered can be lower than the amount of time and effort spent preparing a case. In this case, that factor was compounded by the legal and factual challenges as discussed in paragraphs 28 through 32, above.

41. Nature and length of professional relationship with the client. VLF had no prior relationship with any of the plaintiffs or class members; therefore, this factor is neutral.

42. **Costs**: Plaintiffs incurred $35,607.37. These costs are itemized on VLF's billing statements and include travel expenses, deposition costs, and court costs.

43. **Total Fees and Expenses Sought**: After all exclusions and deductions, Plaintiffs attorney's fee come to **$803,025.31**, including paralegal fees, and taxable costs of $35,607.37.

Further affiant sayeth not.

Joseph L. Lanza

Before me on this 22nd day of September 2016, personally appeared Joseph L. Lanza, who upon his oath swore that he has read the contents of this affidavit, that he has personal knowledge of the statements contained therein and that these statements are true and correct to the best of his knowledge.

SHARON E. COLBY
Notary Public, State of Texas
Comm. Expires 04-13-2020
Notary ID 130617849

Notary Public in and for
the State of Texas