IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

LOUIS VASSALLO, et al. on behalf of
themselves and all others similarly situated           PLAINTIFFS

v.                                              CAUSE NO. 4:15CV97-LG-CMC

GOODMAN NETWORKS, INC.                                  DEFENDANT

## MEMORANDUM OPINION AND ORDER GRANTING JOINT MOTIONS FOR APPROVAL OF SETTLEMENT AGREEMENT

**BEFORE THE COURT** are the Joint Motions for Approval of Settlement Agreement [137, 140] filed by the parties to this conditionally-certified collective action filed pursuant to the Fair Labor Standards Act. After reviewing the Motions, the record in this matter, and the applicable law, the Court finds that the Motions for Approval of Settlement should be granted.

### BACKGROUND

This lawsuit was filed pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq. In their Second Amended Complaint, the plaintiffs allege that they were "non-exempt employees who worked more than 40 hours in a workweek as 'Construction Managers' for Goodman Networks, Inc." (2d Am. Compl. at 1, ECF No. 42). The plaintiffs claim that Goodman failed to compensate them for this overtime work. (*Id.* at 1-2, 5-7). The Court conditionally certified the lawsuit as a collective action. After over two years of litigation, the parties reached a settlement agreement, and they now seek approval of that agreement.[1] Pursuant to the

---

[1] "Final" certification of a collective action is not necessary prior to approval of a FLSA settlement. *In re Wells Fargo Wage & Hour Emp't Practices Litig. (No.*

Court's instructions, the agreement was filed in the record as Exhibit A to the parties' Joint Motion for Approval [140].

## DISCUSSION

## I. REQUEST FOR APPROVAL OF SETTLEMENT

Generally, FLSA claims can only be compromised after a court reviews and approves the settlement. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

> The primary focus of the Court's inquiry in deciding whether the approve the settlement of a FLSA collective action is not on due process concerns as it would be for a Rule 23 class action. Rather, the Court primarily focuses on ensuring that an employer does not take advantage of its employees in settling their claim for wages.

*Dyson v. Stuart Petroleum Testers, Inc.*, No. 1:15cv282-RP, 2016 WL 815355, at *2 (W.D. Tex. Feb. 29, 2016) (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008)) (internal ellipsis and brackets omitted).

A settlement should be approved if it "reflect[s] a reasonable compromise over issues . . . that are actually in dispute." *Lynn's Food Stores*, 679 F.2d at 1354. "The requirement of an adversarial posture between parties to a settlement agreement operates as a guarantee that employers cannot profit by coercing employees into waiving their rights, and then dressing that invalid waiver of the FLSA's protections as a valid settlement of a legal claim." *Sims v. Housing Auth. City of El Paso*, No. EP-10-CV-109-PKC, 2011 WL 3862194, at *6 (W.D. Tex. Sept. 1, 2011).

---

*III)*, 18 F. Supp. 3d 844, 853 (S.D. Tex. 2014).

This Court must first determine whether a bona fide dispute exists between the parties. *See id.* The plaintiffs allege that they were non-exempt employees who should have been compensated at the overtime wage rate specified by the FLSA. However, Goodman asserts that the plaintiffs were construction managers who were exempt from the FLSA requirements. (*See* Ans. at 2-3, ECF No. 49; *see also* Confidential Settlement and Release Agreement at 1, ECF No. 139-1). The parties genuinely disputed several issues including: whether the plaintiffs were correctly classified as exempt; the amount of damages suffered by each plaintiff; whether liquidated damages were appropriate; and the appropriate statute of limitations. The motion practice engaged in by the parties also indicates the adversarial nature of this lawsuit. Thus, the Court finds that a bona fide dispute exists between the parties.

The next consideration is whether the proposed settlement agreement is fair and reasonable. *Dyson*, 2016 WL 815355, at *2. "Although the class-action provisions of Federal Rule of Civil Procedure 23 technically do not apply to collective actions under the FLSA, Rule 23(e) is similar because it requires court approval to finalize a proposed class action settlement." *Id.* As a result, courts often utilize the Rule 23(e) standard to determine whether a FLSA collective action settlement is fair and reasonable. *Id.*; *see also Jones v. JGC Dallas LLC*, No. 3:11cv2743-O, 2014 WL 7332551, at *3 (N.D. Tex. Nov. 12, 2014).

> There are six focal facets [under Rule 23(e)]: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and

> the amount of discovery completed; (4) the probability of plaintiffs'
> success on the merits; (5) the range of possible recovery; and (6) the
> opinions of the class counsel, class representatives, and absent class
> members.

*Reed v. Gen'l Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

The first factor requires the Court to consider the existence of fraud or collusion behind the settlement. The parties participated in extensive discovery and two mediation sessions before entering into the settlement agreement. The use of a mediator during settlement negotiations is an indication that the settlement negotiations were fair and non-collusive. *See, e.g., Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012) (noting that the parties' use of a mediator was a factor indicating that the settlement negotiations were fair); *La Fleur v. Med. Mgmt. Int'l Inc.*, No. EDCV 13-00398-VAP, 2014 WL 2967475, at *4 (C.D. Cal. June 25, 2014) ("Settlements reached with the help of a mediator are likely non-collusive."). Furthermore, there is no evidence of fraud or collusion before the Court. Therefore, the first factor weighs in favor of approval of the settlement.

As for the second factor, "[w]hen the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010) (quoting *Ayers v. Thompson*, 358 F.3d 356, 373 (5th Cir. 2004)). This case is a complex, collective action and the parties agreed to settle the case in order "to avoid the burden, expense, and uncertainty of

litigating Plaintiffs' claims." (Mot., Ex. A at 1, ECF No. 139-1). The parties assert that, if they had not settled the case, they would have filed competing motions for summary judgment concerning multiple issues including Goodman's good faith defense and the correct statute of limitations. The parties also estimate that a trial of this matter would have required presentation of testimony from approximately ninety witnesses and would have lasted approximately five weeks. These considerations support a finding that the settlement is fair and reasonable.

The goal of the third factor – the stage of the proceedings and the amount of discovery – is to "evaluate[] whether 'the parties and the district court possess ample information with which to evaluate the merits of the competing positions.'" *Klein*, 705 F. Supp. 2d at 653 (quoting *Ayers*, 358 F.3d at 369). The parties have represented to the Court that they have conducted ten depositions and produced nearly one million documents. Thus, the parties have had the opportunity to evaluate the merits of their respective positions, and this factor favors approval of the settlement.

The fourth factor, which is the most important factor absent fraud and collusion, considers the probability of the plaintiffs' success on the merits. *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). When analyzing this factor, the court must judge the terms of the proposed settlement against the probability that the class will succeed in obtaining a judgment following a trial on the merits. *Reed*, 703 F.2d at 172. However, the court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and

expense of such a trial." *Id.* As explained previously, liability as well as the amount of damages were strenuously disputed in this lawsuit. Furthermore, the parties agree that they "do not have precise time records that will allow them to determine exactly how many hours plaintiffs worked each week." (Joint Br. at 9, ECF No. 143). The parties agree that some of the plaintiffs would have received no recovery if they had been unsuccessful in proving a willful violation. Meanwhile, the proposed settlement provides substantial relief to all of the plaintiffs who remain parties to this lawsuit, including back wages and liquidated damages. As a result, the Court finds that this factor supports a finding that the settlement is fair and reasonable.

The fifth factor examines the range of possible recovery by the class. This factor primarily concerns the adequacy of the proposed settlement. *See Ayers*, 358 F.3d at 370. The parties submit that the plaintiffs may have been awarded nothing, because the issue of whether the plaintiffs were exempt employees under the FLSA was disputed. If the plaintiffs were found to be nonexempt, then they would have been entitled to backpay. As explained previously, the amount of damages also hinged on whether the plaintiffs were entitled to liquidated damages and whether Goodman willfully violated the FLSA. As a result, the Court finds that this factor weighs in favor of approving the settlement.

The sixth factor is the opinions of class counsel and the class

representatives.[2] The parties and their attorneys agree that the settlement is a fair and reasonable resolution of a bona fide dispute. Therefore, this factor also supports a finding in favor of approving the settlement.

After considering all of the *Reed* factors, the Court finds that the settlement should be approved, because it is a fair and reasonable settlement of a bona fide dispute.

## II. REQUEST FOR APPROVAL OF ATTORNEYS' FEES

"[T]o fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees." *Strong v. BellSouth Telecomm., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998), *quoted in Dyson*, 2016 WL 815355, at *4. In common fund cases, courts in the Fifth Circuit are permitted to use either the percentage method or the lodestar method to calculate attorneys' fees. *Union Asset Mgmt. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012). After utilizing the percentage method, it is often helpful to perform a lodestar cross-check "to avoid windfall fees, i.e., to ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1086 (S.D. Tex. 2012); *see also Klein*, 704 F. Supp. 2d at 675.

### A. PERCENTAGE METHOD

Pursuant to the percentage method, the court awards a reasonable

---

[2] The parties correctly assert that there is no need to consider the opinions of absent class members as this settlement has no impact on absent class members.

percentage of the common fund to the attorneys. *Dell, Inc.*, 669 F.3d at 642-43. The court first determines the actual monetary value conferred to the class by the settlement. *In re Heartland*, 851 F. Supp. 2d at 1075.

> If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses, . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel.

*Id.* at 1072 (quoting Manual for Complex Litig. (4th) § 21.7 (2004)).

After determining the value conferred on the class, the court applies a benchmark percentage to this value. *Id.* Finally, the court applies the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), to determine whether the percentage should be adjusted upward or downward. *Id.*

The value conferred to the class in the present settlement is $2,000,000. Based upon the settlement agreement and the billing report submitted to the Court, it appears that the requested attorneys' fees total $795,656.21, or approximately 39.78 percent of the value conferred to the class.[3] Texas courts have held that a fee of thirty percent is reasonable in a FLSA collective action. *Dyson*, 2016 WL 815355, at *4; *Jones*, 2014 WL 7332551, at *7. Thus, the percentage requested in the present case is somewhat higher than the amount of attorneys' fees typically

---

[3] The settlement agreement provides for a total payment to the plaintiffs' attorneys in the amount of $830,975.56. (Mot., Ex. A at 4-5, ECF No. 140-1). The expenses incurred pursuant to the attorneys' billing report are $35,319.35, (Joint Br., Ex. C at 145, ECF No. 142-3), leaving requested fees in the amount of $795,656.21.

awarded in similar cases. The Court will next perform a lodestar cross-check, which includes application of the *Johnson* factors to determine whether the requested award is reasonable.

**B. LODESTAR CROSS-CHECK**

The lodestar cross-check involves calculation of the lodestar, as well as consideration of the *Johnson* factors, to determine whether the lodestar figure should be adjusted upward or downward. *Strong*, 137 F.3d at 850. Under the lodestar method, the court first multiplies the reasonable number of hours spent working on the case by the reasonable hourly rate for the attorney to determine the lodestar figure. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).

**1. Hours Expended**

"The party seeking attorneys' fees must present an adequately documented time record to the court. Using this time as a benchmark, the court should exclude all time that is excessive, duplicative, or inadequately documented." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The party seeking fees must demonstrate that the hours billed were reasonable and that the lawyers exercised billing judgment by writing off unproductive, excessive, or redundant work. *Black*, 732 F.3d at 502.

The attorneys and paralegals who worked on this case have billed a total of 2552 hours and 24 minutes. They have demonstrated that they exercised billing judgment by writing off 359.9 hours of redundant, excessive, or unproductive time,

representing $83,495 in fees. This leaves a total of 2192.7 hours of attorney and paralegal time. The Court sees no need for making further deductions.

**2. Hourly Rate**

"[T]he relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Id.*

The plaintiffs in the present case are represented by the Vethan Law Firm, PC, which has offices in Houston, San Antonio, Dallas, and Austin. The attorney who performed most of the work on the case is Jonathan Seth Grove, who has approximately seven years of experience. (Joint Br., Ex. A at 2, ECF No. 142-1). Other attorneys who worked on the case include: Joseph L. Lanza, who has approximately twenty-four years of experience; Charles M.R. Vethan, who has twenty-two years of experience and is board certified in civil trial law and consumer and commercial law by the Texas Board of Legal Specialization; Joseph F. Colvin, a business and transactional attorney that has tried nine cases; Diren W. Singhe, who received his juris doctor degree from Cornell Law School in 1997 and specializes in commercial, construction, and professional liability law; Olivia C. Mallary, who is a recent graduate of St. Mary's University School of Law; David L. Bergen, who primarily practices in commercial and complex civil litigation; and Andrew J. Walker, who appears to have at least fifteen years of experience based on

information provided on the firm's website.[4] Attorney Robert Y. Peterson also worked on the case, but no information is provided concerning his credentials in the record or on the firm's website. Mr. Lanza and Mr. Vethan billed their time at a rate of $450 per hour, while Mr. Grove, Mr. Colvin, and Mr. Walker billed their time at a rate of $400 per hour. Mr. Singhe billed his time at $275 per hour, and Mr. Bergen, Mr. Peterson, and Ms. Mallary billed their time at a rate of $350 per hour. Seven paralegals also worked on the case and billed their time at a rate of $200 to $250 per hour.

The plaintiffs have produced affidavits signed by two attorneys who practice in the Houston and Dallas metropolitan areas. These attorneys have opined that the following rates are reasonable in the present case: $450 per hour for attorneys Charles Vethan and Joseph Lanza, $400 per hour for attorney Seth Grove, and $350 to $400 for other attorneys who worked on the case. (Joint Br., Ex. F, G, ECF Nos. 142-6, 142-7). These attorneys did not provide their opinion concerning the appropriate rate for paralegals. However, the Vethan Law Firm's senior paralegal, who has over eleven years of experience, has provided a detailed affidavit concerning the work that was performed by Vethan Firm paralegals on this case. (Joint Br., Ex. B, ECF No. 142-2).

The Fifth Circuit has approved rates of $577.50, $542.50, and $280 per hour for Texas attorneys handling an age discrimination case. *Miller v. Raytheon Co.*,

---

[4] The firm's website, which was last visited on September 30, 2016, is located at www.vethanlaw.com.

716 F.3d 138, 149 (5th Cir. 2013). The United States District Court for the Southern District of Texas has approved the following rates for attorneys who filed a FLSA collective action: $500 per hour for an attorney with over twenty-one years experience, $300 per hour for an attorney with two years of experience, and $100 per hour for paralegals with undocumented levels of experience. *Rouse v. Target Corp.*, No. 3:15cv48, 2016 WL 319871, at *3, *7 (S.D. Tex. Jan. 26, 2016). The Northern District of Texas has recognized that an hourly rate range of $220 per hour for associates to $510 for senior partners is appropriate for Texas attorneys. *Fluor Corp. v. Citadel Equity Fund Ltd.*, No. 3:08cv1556-B, 2011 WL 3820704, at *5 (N.D. Tex. Aug. 26, 2011).

The Court finds that the attorneys' proposed rates, which range from $275 per hour to $450 per hour, should be approved by this Court. Although the paralegals' proposed rates of $200 to $250 per hour are higher than those typically approved, the parties have demonstrated that these rates are justified based on the experience levels of the paralegals and the work they performed. Applying these rates to the 2192.7 hours of attorney and paralegal time that was billed in this case leaves a lodestar of $803,025.31.

### 3. *Johnson* Factors

The Court must next analyze the *Johnson* factors, which are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or

the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19. The Court "must be careful, however, not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments." *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993).

In the present case, the time and labor required, the customary fee, the experience, reputation, and ability of the attorneys, and awards in similar cases have already been considered by the Court. The second and third factors – the novelty and difficulty of the questions involved and the skill required– are neutral factors. The attorneys' billing records and their affidavits demonstrate that they were precluded from handling other cases due to the time-consuming work required for this case. The fee is contingent in that the plaintiffs agreed to pay forty percent of the gross recovery to their attorneys. The attorneys submit that it was more difficult to meet deadlines in the present case, because there were numerous plaintiffs who travel extensively as a result of their occupation.

As for the eighth factor – the amount involved and the results obtained – Mr. Lanza has testified that the best possible outcome for the plaintiffs would have been a $3,000,000 recovery, but there was a "significant risk" that they would have recovered nothing. (Joint Br., Ex. A at 8, ECF No. 142-1). As a result, the $2,000,000 settlement is a good result for the plaintiffs.

The tenth factor is the undesirability of the case. As explained previously, the case was very labor-intensive and there was a risk that the plaintiffs would recover nothing if they went to trial. Therefore, the case was arguably undesirable. The eleventh factor – the nature and length of the professional relationship with the client – has no bearing on the fee award in the present case.

After reviewing the *Johnson* factors, the Court finds that there is no basis for adjusting the lodestar of $803,025.31. The settlement agreement provides for attorneys' fees of $795,656.21, a figure that is slightly less than the lodestar. Thus, the Court finds that the fees are reasonable and should be approved.

## III. APPROVAL OF EXPENSES

The plaintiffs seek payment of $35,319.35 in expenses incurred by their attorneys. Given the duration, complexity, and document-intensive nature of this case, the Court finds that these expenses are reasonable and should be approved.

## CONCLUSION

For the foregoing reasons, the Court finds that the $2,000,000 settlement, which includes payment of attorneys' fees in the amount of $795,656.21 and attorneys' expenses in the amount of $35,319.35 should be approved. The parties have asked the Court to stay the proceedings in this lawsuit until all payments under the settlement agreement have been made. The Court finds that this request should be granted. The parties are instructed to file a stipulation of dismissal with prejudice as soon as possible after the payments have been made.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Joint

Motions for Approval of Settlement Agreement [137, 140] filed by the parties are **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that this lawsuit is **STAYED** pending payment of all sums required by the settlement agreement. The parties are instructed to promptly file a stipulation of dismissal with prejudice after all payments have been made.

**SO ORDERED AND ADJUDGED** this the 13th day of October, 2016.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE